# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## PRO SE PRISONER CIVIL RIGHTS AMENDED COMPLAINT

Use this form to make corrections to your complaint. For example, you may need to change the list of defendants to include a person whose name you did not know at the time you filed your lawsuit. If you are amending your complaint after the Court has issued a Section 1915A Ruling and Order, make sure that you do not include any claims or defendants that the Court has dismissed.

CASE NO. ____________________

**PLAINTIFF(S)** [Write the name(s) of the person(s) complaining. Do not use **et al.**]

Justice Hinton

vs.

**DEFENDANT(S)** [Write the name(s) of the person(s) you are suing. If you do not know a name, write "John Doe" or "Jane Doe." Include the defendant's rank or title if you know it. Do not use **et al.**]

Lt. Pearson, Lt. Rangel, Warden Martin, C.O Conrad, C.O St. Jean, C.O McGregory, C.O Records, C.O Clapp, Unit Manager Oresic, Lt. Dones, RN Bellman, Nurse Supervisor Phillips

Complete every section and **SIGN THE LAST PAGE.**

*Revised 12/13/18*

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim. There are two possibilities. Check one.

I can bring my complaint in federal court because I am suing:

1. ___√___ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. ________ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages. Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   - a. Full Name: Justice Lunon Hinton
   - b. Inmate Number: #408238
   - c. Correctional facility: Northern Correctional Institution

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than six defendants, attach additional pages. Provide items a, b, and c for each defendant.

1. First Defendant
   - a. Full Name: First Name: Unknown, Last Name: Pierson
   - b. Rank or Title: Lieutenant
   - c. Workplace: Corrigan-Radgowski County Correctional

*Revised 12/13/18*

2. Second Defendant
   a. Full Name: First: Unknown, Last: Rangel
   b. Rank or Title: Lieutenant
   c. Workplace: Corrigan-Rad. C.C
3. Third Defendant
   a. Full Name: First: Unknown, Last: Conrad
   b. Rank or Title: Correctional Officer
   c. Workplace: Corrigan-Rad C.C
4. Fourth Defendant
   a. Full Name: First: Unknown, Last: McGregor
   b. Rank or Title: C.O
   c. Workplace: Corrigan-Rad. C.C
5. Fifth Defendant
   a. Full Name: First: Unknown, Last: St. Jean
   b. Rank or Title: C.O
   c. Workplace: Corrigan-Rad. C.C
6. Sixth Defendant
   a. Full Name: First: Unknown, Last: Rosado
   b. Rank or Title: C.O
   c. Workplace: Corrigan-Radgowski C.C

**D. REASON FOR COMPLAINT**

**WARNING: Contact Inmate Legal Aid Program. Common mistakes can get your case dismissed as frivolous or for failure to state a good legal claim.** If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis. To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

*Revised 12/13/18*

7) Seventh Defendant
a. Full Name: First Name: Unknown, Last Name: Martin
b. Rank or Title: Warden
c. Workplace: Corrigan-Radgowski C.C

8) Eighth Defendant
a. Full Name: Jillian Bellman
b. Rank or Title: RN
c. Workplace: Corrigan-Radgowski C.C

9) Ninth Defendant
a. Full Name: First: Unknown, Last: Phillips
b. Rank or Title: Medical Supervisor
c. Workplace: Corrigan-Radgowski C.C

10) Tenth Defendant
a. Full Name: First Unknown, Last: Dumas
b. Rank or Title: Exact Rank unknown at this time
c. Workplace: Corrigan-Radgowski C.C

11.) Eleventh Defendant
a. Full Name: First Unknown, Last: Ocasio
b) Rank or Title: intel. Officer but was Unit Mangr. time of incident.
c. Workplace: Corrigan-Radgowski C.C

12) Twelfth Defendant

a. First Name: Unknown, Last Name: Clapp

b. Rank or Title: Correctional Officer

c. Workplace: Corrigan-Radgowski C.C

1. Failure to use the prison grievance process before suing. If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago: If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved: You can generally only sue defendants who were directly involved in harming you. In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

4. Suing defendants who have immunity to suit for money damages: You generally cannot sue the following people and entities for money damages: the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process). If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first. If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison. If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding. See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case. The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim. Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint. If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every violation of state law or prison regulations amounts to a violation of federal law). What you need to tell the Court is who did what, when they did it, and how you were harmed.

Nature of this Claim: I

1.) This is a civil action brought under 42 U.S.C § 1983 by the Plaintiff, Justice Lamon Hinton, asserting contravention of the Eighth and First Amendment of the United State's Constitution, by way of the "atypical and significant hardship" of and induced by the excessive use of force and adverse actions of the defendants, subjected to the Plaintiff at the Corrigan-Radgowski Correctional Center "CRCC".

2.) The Plaintiff is a sentenced prisoner who was singled out and targeted erroneously by correctional officers ("C.O's") at Corrigan for mere speech, speech protected by the Constitution, after a vindictive cell search where the Plaintiff returned to find the cell dismantled in complete disarray in addition to damaged and confiscated property.

3.) The Plaintiff was spontaneously attacked from his blind-side and then egregiously beaten by a gang of C.O's + LT's after requesting to speak to a supervisor and refusing to re-enter a cell that was in a condition I didn't leave it in. All I wanted was for a higher up to come rectify where I was wronged, my sole refusal to go in my cell DOES NOT constitute a gratuitous beatdown. I was then denied proper medical attention and documentation of my injuries and pressed with charges falsely accusing the Plaintiff of Assault on a Department of Corrections (D.O.C) officer.

4) The Plaintiff asserts that the Defendants actions were reckless, excessive, malicious, wanton, and retalitory bringing

forth this action.

Jurisdiction & Venue: II

5.) Jurisdiction is conferred upon this court pursuant to 42 U.S.C § 1331 and 1343 (a)(5).

6.) This court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C § 1367

7.) This court has jurisdiction to grant injunctive relief pursuant to rule 65 R.Civ.P.

8.) Venue is appropriate in the District of Connecticut under 28 U.S.C § 1391 (b).

Each Defendant resides in the District of Connecticut and all of the acts or omissions giving rise to this claim herein arose in the District of Connecticut.

Parties: III

9) Plaintiff, Justice Lamar Hinton, is an individual who was incarcerated at Corrigan-Radgowski Correctional Center during the relevant time period. Mr. Hinton is currently a prisoner at Northern Correctional Institution (N.C.I).

10) At all times relevant, Defendant(s): Pearson, Rangel, Conrad, St. Jean, McGregor, Rosado, Clapp, Martin, Dumas, Bellmon, Oassie, Phillips, and a DHO who's currently John Doe ("Collectively, the Correctional Officers (C.O's) and other titles/Ranks were employed by the CTDOC at Corrigan C.C. The Correctional Officers were responsible for the care and custody of persons incarcerated at Corrigan, including the Plaintiff Justice Hinton. The C.O's are all being sued in their individual capacity.

11.) At all times relevant, Defendant Pearson was employed by the CTDOC at Corrigan CC as a Lieutenant, as such he is responsible for the care and custody of persons at the facility including the Plaintiff, Justice Hinton. Pearson is being sued in his individual capacity.

12.) At all times relevant, Defendant Rangel was employed by the CTDOC at Corrigan CC as a Lieutenant, as such he is responsible for the care and custody of persons at the facility including The Plaintiff, Justice Hinton. Rangel is being sued in his individual capacity.

13.) At all times relevant, Defendant Martin was a Warden at Corrigan CC employed by CTDOC, as such he is responsible for the care and custody of persons at the facility including the Plaintiff, Justice Hinton. Defendant Martin is being sued in his individual capacity.

14.) At all times relevant, Defendant Jillian Bellman was a Registered Nurse at Corrigan CC employed by CTDOC. As such she is responsible for the medical care of persons incarcerated at the facility including the Plaintiff, Justice Hinton. Defendant Bellman is being sued in her individual capacity.

15.) At all times relevant, Defendant Phillips was a Medical Supervisor at Corrigan CC employed by CTDOC. As such the Defendant is responsible for the Medical Care and Supervision at Corrigan CC. The Defendant is being sued in her individual capacity.

16.) At all times relevant, Defendant Dumas was employed by the CTDOC at Corrigan CC as (Rank unknown at this time), as such he is responsible for the care and custody of persons at the facility including the Plaintiff, Justice Hinton. Defendant Dumas is being sued in his individual capacity.

17.) At all times relevant, Defendant Ocasio was employed by the CTDOC at Corrigan CC as Unit Manager of The Program, as such he is responsible for the Management, care, and custody of persons at the facility including The Plaintiff, Justice Hinton. Defendant Ocasio is being sued in his individual capacity.

18.) At all times relevant, Defendant "John Doe" was one of "X" amount" of Disciplinary Hearing Officers [redacted] assigned jurisdiction by CTDOC of Corrigan CC, as such he is responsible for taking all evidence into account and conducting a fair trial, ultimately being unbiased in his decision-making for any persons incarcerated taking a matter to a hearing. Including the Plaintiff Justice Hinton. Defendant "John Doe" is being sued in his individual capacity.

19.) At all times mentioned herein, Plaintiff was in the custody of one of several correctional institutions operated by CTDOC.

20.) At all times mentioned herein, each Defendant was acting in the course and scope of his/or her employment.

21.) At all times mentioned herein, each Defendant was acting under color of state law.

Facts: IV

22.) The Plaintiff has exhaust all CTDCC administrative remedies prior to the filing of this complaint, by following the chain of command seeking a resolution through the inmate request form system before filing all available administrative remedies (grievances) and/or appeals.

23) CTDCC conducts its operations according with various Administrative Directives; including but not limited to A.D 2.17 ("Employee Conduct"), A.D 9.5 ("Code of Penal Discipline"), A.D 6.14 ("Security Risk Groups"), A.D 9.4 ("Restrictive Status"). There are other Administrative Directives that relate to the DOC's operation of it's institutions.

24.) The Plaintiff is presumed to be affiliated with the Bloods ("SRG Bloods") a recognized Security Risk Group in Connecticut's Department of Corrections ("CTDOC")

25.) Prisoners designated as security risk Group members are required to do the SRG program phases 1 through 5 ("SRG phases") with each SRG phase having distinct living conditions, restrictions, and "privileges", SRG phase 1 being the most restrictive and 5 being the least.

26.) Each SRG phase takes a minimum of sixty days to complete barring any ticket also known as Disciplinary Reports (D.R's).

27.) The Plaintiff is a "Two-Timer" in the SRG meaning he completed the program prior to release. As a 2 timer he is required to remain ticket free for a minimum of 2 years before being transitioned back into general population ("G.P").

A. The Plaintiff is transferred to Corrigan

28) On or about the month of June 2019 the plaintiff was transferred from MacDougal-Walker Correctional Institution ("MWCI or "Walker") to Corrigan, ultimately to be placed in the custody of Warden Martin. This transfer was a direct result of exceptional behavior, Mr. Hinton remained ticket free for nearly a total of 6 months hence, progressing to the next phase of the SRG program.

29) In Corrigan B-Pod unit, where the Plaintiff was housed and phases 3 through 5 are conducted, prisoners are required to live in close quarters (inside cell) with the opposite affiliation, subject and liable to have random cell searches everyday and a bodily frisk upon exiting the cell.

30) The Plaintiff witnessed these restrictions enforced and implemented inadequately, unlawfully, arbitrarily, and in a discriminatory fashion. Officers using malicious mechanisms for psychological torture and harrassment by the inducement of vandalism during the routine cell searches of Himself and other inmates alike... Regardless of their affiliation whether it be Bloods, Crips, or Latin Kings

31.) Before being a witness and victim of verbal and physical [redacted] assaults compelled by racial diversity at the facility; Mr. Hinton assumed the overwhelming presence of racism was to be attributed to the facility's geographic setting being suburban. Ultimately causing an imbalance in the ratio of Caucasian officers employed at Corrigan's Correctional to any minorities including but NOT limited to African Americans and those of Hispanic descent.

32.) In the events leading up to the Plaintiff being so flagrantly beaten by a swarm of Caucasian/white officers, Americans around the country and within the prison systems were up in arms. Revolting and Riots took place to assert that "Black Lives Matter", destruction of statues commemorating Civil War "Heros" who at any time were slave owners also prominent after the broadcasted death of a rather docile Black man despite his stature being sturdy - George Floyd killed by the blatant use of excessive force. Somehow the issue of excessive force is a gray area when it comes to how much or how little is necessary in certain situations and it needs to be meticulous so that authority can act accordingly, and if they neglect to then it shouldn't be a hassle to get justice for the victims.

33.) These events spoken of in paragraph 32 (above) caused high tension throughout the Corrigan-Radgowski

facility as the Correctional Officers displayed hostility and made the atmosphere so thick with animosity you could choke on it. With demeanors anything but friendly they became more destructive with shakedowns, seemingly shorter recreation time (opposed to an hour we'd get 30 minutes), and unnecessary lockdowns. Mixed in with their not so subtle hatred for men with Melanin in their skin, made for an evil elixir I could've never saw coming.

B. Retaliatory actions are taken against Plaintiff

34.) After being ticket-free for the totality of Mr. Hinton's (Plaintiff) custody in CTDOC up until 6/30/20, when the plaintiff was victimized and imputed with false implications.

35.) On June 30, 2020 between the times of 10:00 p.m and 11:00 p.m the Plaintiff was secured in his cell watching his scheduled program and preparing for bed, when he heard the unit erupt into a frenzy.

36.) The plaintiff went to his door to see what all the commotion was about and there were 2 nurses 1 of them was new and admittingly attractive.

37.) The plaintiff began talking to a peer, whom made a harmless compliment on the nurse's good looks. In response I retorted a compliment of my own, something equally vanilla.

38.) Defendant C.O St. Jean escorted the nurses out of the cell and almost|nearly immediately came back to the Plaintiff's door, opened it and asked why Mr. Hinton was banging?, Despite the fact that the plaintiff wasn't banging and the number of inmates at their cell doors. Mr. Hinton was clearly sought out.

39.) The Defendant St. Jean inferred the plaintiff's reassurance that he, in fact, was not the one banging as a "wisecrack" despite the manner in which he was completely honest and in return ordered the Plaintiff go to the sally Port while he conducted a "Shake Down" on the Plaintiff's cell.

40.) The plaintiff did as directed and patiently waited while the C.O's were in his cell for nearly 45 min. but while he was there he couldn't help but notice that the lights in the unit hadn't been turned on yet, when in fact whenever a cell search is conducted the lights are to be on so the camera can capture efficient surveillance/footage of whatever is taking place. The lights were <u>NEVER</u> turned on.

41.) When the Correctional Officers finally retrieved the Plaintiff from the sally port, they had a few of the Plaintiff's electronics, they claimed that they did not have Mr. Hinton's name inscribed into them when in fact he'd purchased them from Commissary and still had receipts as proof of purchase if necessary.

42.) The Plaintiff was certain that there had been a mistake made on the C.O's behalf and the property would be rightfully returned to him once straightened out, as he proceeded back to his cell.

43.) The Plaintiff was taken aback when he found his cell in shambles, unlike how'd he left it. Leaving him feeling violated and as if he's beneath respect.

44.) The Correctional officers left Commissary items opened and pour onto Mr. Hinton's floor, food items that were sealed and brand new were opened and scattered about including the meal he'd just prepared. Family photos were also out of their place (My Photo Album) what purpose is there to remove pictures from an album other than to deliberately infringe upon ones right to be free of harassment.

45.) The Plaintiff asked the Correctional Officers to fix the cell and C.O St. Jean began screaming demands that Mr. Hinton shut up and go in his cell. Mind you as these words are being exchanged the plaintiff is surrounded by 3 C.O's, 2 of whom are Defendants in this complaint (St. Jean and McGregor) the third officer's name is Boulanger.

46.) The Plaintiff clearly stated and emphasized he didn't want any trouble but insisted that a Lieutenant be summoned to the scene to rectify this issue because it was evident there would be no reasoning with these 3 C.O's.

47.) Defendant St. Jean interpretted the plaintiff's request for a Lieutenant as a refusal and abruptly snatched Mr. Hinton by his wrist.

48.) The Plaintiff is diagnosed with PTSD (Post-Traumatic Stress Disorder) which his medical records reflect. This caused Mr. Hinton to tense and yank his arm away as a direct reaction to the officer's abrupt grapple.

49) The plaintiff then felt a hand crash into the side of his skull before a code was called, and the onslaught only grew in viciousness as officers responded to Bravo Pod or B-Pod where all was taking place. The initial strike caused everything to go black, Mr. Hinton temporarily lost consciousness but didn't lose the right mind to protect his face from the attacks. The Plaintiff was blind-sided, never saw the punch coming and subsequently, he wasn't able to detect any of those who indulged in the beatdown after the first hit because Mr. Hinton was determined to make it out of the thrashing with minimal damage to his facial area hence, his arms being up in a blocking position. For a fair portion of the beating The Plaintiff stood fortified but once He was taken down he was hit by a plethora of different body parts, he was kicked, kneed, punched, and even briefly eye-gouged. They scream-ed ("They" being the defendants) for the plaintiff to put his hands behind his back but continued to throw vicious blows, this was an attempt to make it

appear as if Mr. Hinton was resisting, a tactic used all too often and we see it in bodycam footage at an alarmingly rate. The Plaintiff never during the course of events intentionally threw a punch at any officer nor was he flailing his arms where he could of accidentally hit an officer. In fact the officers were so driven and hell bent to inflict damage on the plaintiff that at any given time while in the fray they could have landed blows to each other, a bit of friendly fire as they call it. Notably, there is no visual evidence that can attest to the defendant's claims that the plaintiff was in any way combative. In all honesty I wouldn't be at all surprised if the video submitted is completely distorted because the lights were never on.

50.) With blatant disregard to the plaintiff's medical records and verbal notification of having a history of asthma chemical agent was deployed directly in the platiff's eyes and mouth, displaying disregard to whatever hazards such a reckless action may have posed. The plaintiff repeatedly said that he couldn't breathe, it was his first time ever being sprayed and the choking sensation it caused made his breathing shallow.

51.) In the course of the plaintiff's beating, Mr. Hinton was both assaulted and insulted as the defend-

ants rained a series of racist remarks and strikes that penetrated deeper than simply the plaintiff's semblance. It ~~cq~~ cut the plaintiff deep and enlightened him to the fact that we haven't only not overcome racism but it's a prevalent as ever, it's just being obscured - blanket racism is a good way to put it.

52.) The defendant's attempted to mask their malice with orders to "stop resisting" (aforementioned in statement 49) and to "stop spitting" when in fact the plaintiff was NOT resisting or spitting in anyone's direction, but being unable to swallow the chemical he was forced to let saliva fall from his mouth in an attempt to clear his air way. The plaintiff head was faced downward that entire time.

53.) The defendants then placed a spit veil over the plaintiff's face not only metaphorically masking the aftermath of their malice but by actually covering the damage done so none of the Plaintiff's peers would witness the injuries he'd suffered under the "watchful eye" of both defendants Pearson and Rangel. Rangel deployed the chemical on the plaintiff.

54.) When the defendants decontaminated the Plaintiff in the shower as required, the plaintiff's veil wasn't fully removed before Defendant Clapp intentially applied scalding hot water to Mr. Hinton's

face, not only causing significant discomfort but giving the plaintiff the feeling that whomever handled the veil was trying to waterboard him.

55.) Just to reiterate this violent assault came as a result of the Plaintiff's request for a lieutenant in an attempt to redress grievance, something protected by the Constitution of the United States.

56.) Such an assault from State officials is an atypical and significant hardship to the ordinary incidents of prison life.

C. The Plaintiff is denied Medical Attention

57.) Following the incident the Plaintiff was escorted to the Restrictive Housing Unit.

58.) Prior to being placed in RHU a mental Health Social Worker is required to examine the prisoner to determine if the prisoner's mental state is suitable for such a restrictive setting.

58.) At Corrigan this process is denied due to the fact that it is not a Mental Health Social Worker who conducts this examination, but a nurse.

59.) Defendant Nurse Jillian Bellman reported the plaintiff's medical condition following the incident.

60.) Opposed to examining the plaintiff's injuries the plaintiff was asked mental health questions, disregarding the treatment the plaintiff was in need of despite his injuries being conspicuously visible at the time.

61.) The Plaintiff at the time was already being treated for nerve damage preceding this incident. The pain that permeated the Plaintiff's body from the result of the defendants' recklessness persist to date but during the time Nurse Jillian Bellman was questioning the Plaintiff he was so overwhelmed by the stinging and burning sensation of the chemical that he couldn't form his thoughts or process the events that had taken place. Mr. Hinton was disoriented to say the least. The plaintiff had his head down the entire time to escape humiliation because the mucus coming from his nose was uncontrollable and the Plaintiff wasn't told to look in the camera's direction or informed that still-shots were even being taken, as a result you'll see largely in evidence pictures of the top of the Plaintiff's head. Yet another questionable action.

62.) Once the plaintiff reached his cell and was able to restore his vision by constantly washing his face with cold water the damage was made visible and the Plaintiff was devastated.

63.) In proximity of 12:30 am 6/31/20 the plaintiff was delivered a disciplinary report for the first time since his incarceration (dating back 18 months earlier) for Assault on D.O.C implicating false accusations.

64.) The Plaintiff has little to no violent history as an adult in the Dept. of Corrections, if he does have any it exists in Manson Youth Institution Connecticut's Juvenile facility.

65.) Defendant St. Jean's account of what took place that night of 6/30/20 does not accord with how the Plaintiff's character is depicted by his DOC history. The Plaintiff has never become belligerent with the authorities.

66.) Before the unparalleled finding of guilt was established at a hearing the Plaintiff was paid a visit by a state trooper whom charged and finger printed Mr. Hinton for an incident that wasn't yet deemed to be true.

67.) In the days that followed, the Plaintiff wrote numerous requests pertaining to the failure to treat and document injuries where the plaintiff was neglected responses from the defendant.

68.) On or about July 12th 2020, the plaintiff experienced an episode where he passed out and hit his head after feeling weak from the defendant's use of force.

69.) When The Plaintiff came to he attempted to press the emergency button to no avail, it rendered absolutely no response.

70.) When the plaintiff wrote a request to Medical's supervisor, Defendant Phillips, a response was neglected.

# First Cause of Action

(Retaliation in violation of First Amendment against Defendants "The Correctional Officers", Rangel and Pearson, in their individual capacity pursuant to 42 U.S.C § 1983)

71.) Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 56 as if set forth herein.

72.) At all times relevant to this action, Defendants were DOC employees, responsible for the care and custody of plaintiff acting under color of law.

73.) Plaintiff engaged in free speech protected by the first Amendment, merely speaking, responding, or inquiring about a superior.

74.) Defendants took adverse action against plaintiff by:

(a) Placing plaintiff in segregation pending false charges of assault and a false ticket

(b) Using excessive force & assaulting the Plaintiff

75.) Talking, responding, & inquiring about a Lieutenant was a substantial or motivating factor for Defendants adverse action against Plaintiff.

76.) The Nature of Defendants adverse actions against Plaintiff would deter a similarly situated individual of ordinary firmness from engaging in protect speech.

77.) Defendants wrongful conduct in taking adverse action against The Plaintiff based on protected speech amounted to unlawful retaliation in violation of Plaintiff's rights under the first Amendment of the

United States Constitution and Plaintiff suffered damages as a result of Defendants wrongful conduct.

78.) Accordingly, Defendants are liable to Plaintiff pursuant to 42 U.S.C.A § 1983

Second Case of Action

(Retaliation in violation of First Amendment against Defendants: St. Jean, Conrad, McGregor, in their individual capacity, pursuant to 42 U.S.C § 1983)

79.) Plaintiff incorporates by reference the allegations set forth in paragraph 1 through 56 as if fully set herein.

80.) At all relevant times to this action, Defendants were D.O.C employees responsible for the care and custody of Plaintiff acting under color of law.

81.) Plaintiff engaged in speech protected by the first Amendment by merely conversing with a peer.

82.) Defendants took adverse action against plaintiff by:

(a) Pulling him from the security of his cell

(b) Vandalizing the Plaintiff's cell

83.) Subject Matter in a discussion with another prisoner was a substantial or motivating factor for Defendants' adverse action against plaintiff.

84.) The nature of Defendants' adverse actions against plaintiff would deter similarly situated individual

of ordinary firmness from engaging in protected speech.

85.) Defendants wrongful conduct in taking adverse action against Plaintiff based on Protected speech amounted to unlawful retaliation in violation of plaintiff's rights under the first Amendment of the United States Constitution and plaintiff suffered damages as a result of Defendants wrongful conduct.

86.) Accordingly, Defendants are liable to plaintiff Pursuant to 42 U.S.C.A § 1983

Third Cause Of Action

(Intentional Infliction of Emotional Distress against St. Jean, McGregor, Conrad, John Does, Rangel, and Pearson in their individual capacity)

87.) Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 62 as if set forth herein

88.) Defendants intended to inflict emotional distress on Plaintiff, or Knew or should have Known distress was the likely result of their conduct.

89.) Defendants' conduct was extreme and egregious.

90.) Defendants conduct was the cause of Plaintiff's emotional distress.

91.) The Emotional Distress sustained by the Plaintiff was severe: Fourth Cause of Action

(Excessive Use of Force in violation of the Eighth Amendment against St. Jean [redacted], McGregor, Conrad, Rangel, Pearson and John

Doe's in their individual capacity, Pursuant 42 U.S.C § 1983)

92.) Plaintiff incorporates by reference the allegations set forth in paragraph 1 through 56 as if set forth herein

93.) At all times relevant to this action, Defendants were employees of D.O.C responsible for the care and custody of Plaintiff acting under color of law.

94.) Plaintiff was a sentenced prisoner when Defendants unnecessarily utilized chemical agent and assaulted the plaintiff relentlessly and maliciously on June 30, 2020.

95.) The force used by the Defendants against Plaintiff on June 30, 2020 was objectively unreasonable and excessive.

96.) Due to defendants wrongful acts, Plaintiff suffered physical, mental, and emotional injuries in violation of his rights under the Eighth Amendment of the United States Constitution.

97.) Accordingly, Defendants are liable to plaintiff pursuant to 42 U.S.C.A §§ 1983

Fourth Cause of Action

(Deliberate Indifference to a serious Medical need against Jillian Bellman and Phillips in their individual capacities, pursuant to 42 U.S.C §1983)

98.) Plaintiff incorporates by reference the allegations set forth in paragraphs 57 through 70 as if fully set forth herein

99.) At all times relevant to this action, Defendants were DOC employees responsible for the care while in custody of Plaintiff, acting under color of law.

100.) Defendants knew that the unreasonable and unconstitutional indifference to Plaintiff's injuries in Corrigan CC posed an illogical risk to plaintiff's health and safety.

101.) Despite Defendants' Knowledge and obligation to treat the plaintiff, Defendants deliberately disregarded the unreasonable and excessive risk to Plaintiff's health or safety and failed to take any action to prevent or reduce risks.

102.) Defendants acts and omissions of Defendants subjected Plaintiff to mental and emotional injuries in violation of Plaintiff's constitutional rights guaranteed by the Eight Amendment of the United States Constitution.

103.) Accordingly, Defendants are liable to Plaintiff pursuant to 42 U.S.C.A §§1983.

## Fifth Cause of Action

(Retaliation in violation of First Amendment: Supervisory Liability against Defendants Martin, Rangel, and Pearson in their individual capacities, pursuant to 42 U.S.C § 1983)

104.) (Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 70, Pursuant to 42 U.S.C § 1983)

105.) At all times relevant to this action, Defendants were D.O.C employees responsible for the care and the custody of the Plaintiff, acting under color of law.

106.) Defendants were personally involved in and responsible for Defendant McGregor, Conrad, St. Jean, and John Doe's unconstitutional practices that:

(a) they were aware of, approved, encouraged, and/or failed to correct the Unconstitutional practice that the Defendants demonstrated:

and/or
(b) They created, and/or allowed the continuance of a policy or custom under which unconstitutional practices occurred.

107.) Defendants wrongful conduct in creating or allowing the continuance of a policy or custom under which unconstitutional practices occurred, or in encouraging, failing to correct, or otherwise failing to prevent such unconstitutional practices, amounted to unlawful retaliation in violation of Plaintiff's rights under the First Amendment of the U.S Constitution and Plaintiff suffered damages as a result of Defendants wrongful conduct.

108.) Accordingly, Defendants are liable to Plaintiff pursuant to U.S.C.A § 1983

## Request For Relief

1) Declaring that Defendants policies, practices, acts and omissions as described herein violate plaintiff's rights as guaranteed by First and Eighth Amendments to the Constitution of the United States;

2) Permanently enjoining Defendants, their officers, agents, employees, and successors in office, along with those acting in concert with them, from engaging in the unlawful practices described herein;

3) Awarding general, special and actual damages in an amount proven at trial

4) Awarding punitive damages;

5) Awarding costs and attorneys fees, and

6) Awarding any and all other relief as this court deems just and proper.

Demand For Jury Trial

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to trial by jury.

Submitted June 1st of 2021

Respectfully Submitted,

By: [signature]

# Verification

Declaration Under Penalty of Perjury

By Signing this amended complaint, I certify under penalty of perjury that the information contained in this amended complaint is true and accurate to the best of my Knowledge. I understand that if I lie in this amended complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.

Signature:

Signed at Northern C.I on 5/30/21

Handwritten copy x( [illegible] [illegible])

# Inmate Request Form

Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: # 403233

Facility/Unit: MWCI | Housing unit: B2-33 cell | Date: 3.10.19

Submitted to: Warden

Request: Before you are convicted, you are a pre-trial detainee, constitutionally entitled to access to a law library in jail, each day for 8 hours, a personal T.V, medical care equal to what non-convicted prisoners have outside jail, unlimited, unrestricted phone calls, mail, and visits. Just to name a few of your rights. However, I'm somehow exempt to ALL of the above. I'm requesting full access to ALL of the following listed please and thank you.

continue on back if necessary

Previous action taken:

SCANNED at MWCI
and Emailed
[illegible] date ST initials 8 No. pages

continue on back if necessary

Acted on by (print name): | Title:

Action taken and/or response:

continue on back if necessary

Staff signature: | Date:

Copy made 10/1/2020

# Inmate Administrative Remedy Form

## Connecticut Department of Correction

CN 9602
REV 9/20/17

Facility/Unit: MacDougal-Walker Correctional Institution
Date: 9/30/2020

Inmate name: Justice L. Hinton
Inmate number: # 408238

**SECTION 1: SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.**

Follow the instructions and Refer to Section 2 below

*(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

A. ☑ **I am filing a Grievance.**

- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response **OR** state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

B. ☐ **I am requesting a Health Services Review:**

☐ All Other Health Care Issues ☐ Diagnosis/Treatment — **Complete Section 4**

C. ☐ **I am filing an Appeal of a (select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

| | | |
|---|---|---|
| ☐ Disciplinary Action | | > **Complete Section 3 below** |
| ☐ Special Management Decision | ☐ Classification Decision | > **Complete Section 4** |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | > |
| ☐ Security Risk Group Designation | ☐ ADA Decision | > |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > |
| | ☐ Rejection of Correspondence | > |

**SECTION 2: OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE**

- Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side.

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

**SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY**

- You may file a Disciplinary Appeal **ONLY** if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

Offense: Report date:

Facility where hearing was conducted: Date of hearing:

Did you have an advisor? ☐ yes ☐ no If yes, name of advisor:

Did you identify witness (es) to the investigator? ☐ yes ☐ no Did your witness (es) testify? ☐ yes ☐ no

Name(s) of any witness(es):

**CONFIDENTIAL**
(FOR OFFICIAL USE ONLY)

Inmate name: Justice L. Hinton
Inmate number: #408238
Housing: B2-80 cell

**SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION**

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

On the date of 6/30/2020 an incident occurred where I was struck repeatedly w/ closed fist strikes by multiple Correctional officers. I did my due-diligence and followed the procedure of Remedy Exhaustion only to be stifled because of Admin's failure to comply. My submitted request forms were never acknowledged and returned to me. Luckily, I made copies of each one to Medical - for failing to record or tend to my injuries, Unit Manager Ocasio - for the way that the situation was mishandled, Dumas (who's rank i'm unsure of) - to rectify the situation at hand with reason and make an unbiased decision, another to Medical - for another attempt at informing them that they neglected to document my injuries, and Warden Martin - so that he could intervene and make a righteous decision that these prior were incapable of doing. To resolve this dilemma is rather simple exhaust my remedies so that I can move along w/ the legal proceedings. Please and thank you. The said incident took place in Corrigan Radgowski C.I

Inmate signature: [signature]
Date: 9/30/2020

- **For all remedies except health services, deposit this form in the Administrative Remedies box.**
- **For a health services issue, deposit this form in the Health Services box.**

**SECTION 5: DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW**

Date Received: IGP #: T#:

Disposition: RWD 05? Date of Disposition:

Reason:

See attached CN 9602

☐ You have exhausted DOC's Administrative Remedies. ☐ This matter may be appealed to:

Signature: Date:

CRS

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: # 408238

Facility/Unit: CRCC | Housing unit: RHU-101 | Date: 7.9.20

Submitted to: Dumas

Request: I was assaulted by staff (Known $ unknown) on the date of 6.30.20 at the time of 10:00-11:00 p.m. I am requesting that the frivolous accusations that I was the one who caused harm dismissed. I wasn't aware that it could be thrown out on a ground level but being that it can why go through the hassle of putting me through a hearing? I was there so I know what happened and cameras DO NOT lie. It's obvious that I resisted movement but I didn't attack anyone and that footage can atest to that and if you seen it don't turn a blind eye on my innocence because it would make it difficult to look your peers →

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name): | Title:

Action taken and/or response:

continue on back if necessary

Staff signature: | Date:

In the eye. You being in a position of power should intervene and make a correction where there's error, for the sake of doing the right thing like in baffled you guys are just sitting around ~~to~~ watch this thing play out. My life isn't a game like this shit is fool.

# Grievance Returned Without Disposition

## Connecticut Department of Correction

Inmate name: Hinton, Justice

| Facility/Unit: CRCC | | Inma |
|---|---|---|
| Return log number: RWD05 | Housing unit: B2-80 | Da. |

**Your attached grievance is being "Returned Without Disposition" for the following reason(s).**

In accordance with Administrative Directive 9.6, Inmate Administrative Remedies, Section 6(E), a grievance may be **Returned Without Disposition** to the inmate for the following reasons:

1. ☐ An inmate shall attempt to resolve a problem through the Inmate Request System prior to filing a grievance. The inmate shall attach CN 9601, Inmate Request Form, containing the employee's response, or explain why it is not attached (see comments below).

2. ☐ A grievance must be filed on CN 9602, Inmate Administrative Remedy Form.

3. ☒ Each grievable matter shall be submitted on a separate CN 9602, Inmate Administrative Remedy Form.

4. ☒ The grievance and the action requested should be stated simply and coherently.

5. ☐ The length of the grievance shall be restricted to the space available on the face of the grievance form and one additional page.

6. ☐ The grievance must be free of obscene or vulgar language or content.

Comments:

Please deposit into the administrative remedies box in the unit, do not mail in the US mail.

**You may resubmit grievance when it is in compliance with Administrative Directive 9.6, Inmate Administrative Remedies.**

| Administrative Remedies Coordinator: CC King | Date: 10/13/2020 |
|---|---|

# Inmate Grievance Appeal Form - Levels 2/3

**Connecticut Department of Correction**

CN 960[illegible]
REV 1/31/09

| | |
|---|---|
| [I]nmate name: Justice L. Hinton | Inmate number: # 408238 |

| | | |
|---|---|---|
| [Fac]ility/Unit: MWCI | Housing unit: B2-49 | Date: 12/15/2020 |

| | |
|---|---|
| [Grievance] number: | T number: |

**[Use] this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this [form]; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 [resp]onse; deposit it in the "Administrative Remedies" box.**

**Appeal of Level 1 Decision to Level 2**

[I am] appealing the Level 1 decision because: While I was in RHU from 6/30/20 thru [so]me time late July I wrote several requests, none of which were respond[ed] to. On top of the fact that I was denied CN9602's while in their cus[tod]y making it absolutely impossible to grieve these matters in 30 calendar [da]ys. fact of the matter is the entire Remedy Exhaustion process is broken. No issues [ar]e being resolved and it saddens me, honestly.

[In]mate signature: [signature] Date: 12/15/2020

**FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW**

| | | |
|---|---|---|
| [Da]te received: *12/28/20* | Disposition: ***Rejected*** | Date of disposition: *1/15/21* |

[R]easons: *You are appealing a level one grievance regarding staff conduct at M.W.C.I. The response given by Warden Barone was appropriate. Your grievance was submitted far beyond the allotted timeframe (30 calendar days of the occurrence or discovery of the cause of the grievance) from the incident you claim occurred at C.R.C.C. This grievance was filed improperly and therefore rejected, it does not meet the criteria for a level 3 review.*

[L]evel 2 reviewer: [signature]

- [ ] This grievance may be appealed within 5 days to Level 3.
- [x] ~~You have exhausted the Department's Administrative Remedies.~~ Appeal to Level 3 will not be answered.

**Appeal of Level 2 Decision to Level 3**

[I] am appealing the Level 2 decision because:

[In]mate signature: Date:

**Deposit your appeal in the "Administrative Remedies" box.**

**FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW**

| | | |
|---|---|---|
| [D]ate received: | Disposition: | Date of disposition: |

[R]easons:

[L]evel 3 reviewer:

* Copy made

# Inmate Request Form

**Connecticut Department of Correction**

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: #408238

Facility/Unit: CRCC | Housing unit: RHU-101 | Date: 7.11.20

Submitted to: Ocasio/Unit Manager

Request: I'd like to talk to you sir, about this whole outcome because as you know I was found guilty during my hearing Friday - I pleaded NOT guilty obviously - but i'm confused by this whole process and verdict with the lack of evidence. That camera footage is substantial especially for me, it was vital in my defense. But as you've seen there's a pillar in the way and you can't see what happens for a good amount of time. Either way I can take a polygraph or anything to prove that I in fact never swung on any of the officers. My word is all I have and contrary to their reports I was the one beaten cas. And you said it yourself you seen my injuries, →

continue on back if necessary

Previous action taken: I wrote Dumas $ Warden Martin so they can intervene and dismiss this at a ground level but they had something else in mind. Let Justice Hinton suffer the injustice of this Admin. They re trying to put me through the wringer. I've never gotten a DR since I started this bid 18 months ago now I'm assaulting C.Os?

continue on back if necessary

cted on by (print name): | Title:

ction taken and/or response:

continue on back if necessary

ff signature: | Date:

that medical neglected to document; can I get a written statement confirming that you indeed seen the aftermath of the incident? So, it doesn't look like i'm crying wolf here! I have no reason to fabricate any of the events that took place on 6/30/20. Officer St Jean even wrote in a statement he struck me repeatedly meanwhile whomever else put hands on me that night never accounted for their actions so where does that leave me? St. Jean is saying he struck me in the back of the head a few times but somehow I appear with a knot overlapping my left eye, a black left eyelid, a knot on the right side of my forehead, knots scattered atop my head, soreness to my temple, and a minor laceration under my left eye (that's going to leave a blemish if not a scar)? 2+2=4 nobody's looking at the facts or lack of for that matter. It's easy for a state employee to create a false narrative and have it deemed the truth by his peers and thats exactly what's going on here. I don't know how McGreger got that "contusion" on his cheek but it could've easily been a strike intended for me by one of his coworkers that failed to hit it's mark but i'm the scapegoat. Why? Because I put them through "extra work", I resisted movement and the higher ups go along with it because "McGreger" is one of ours, he's a comrade right? And it troubles me that all my evidence was cast aside and disregarded. I have plenty more to say but I don't want to overwhelm you so i'll end by saying this: I have 3 statements from 3 inmates who's cells were positioned perfectly to witness what transpired that night. Everything they wrote matches and aligns with what i'm saying (I just have more details because I was a victim) when in fact we had NO way to organize a rehearsed play out of the events. I'm in Seg, Vanterpool's in another pod, Bailey and Bryant are still in B pod - scattered all over - that's no coincidence that we all have a similar narrative. The truth is the truth and your staff are dishonest. period!

Unit Manager Ocasio

| **CONFIDENTIAL** (FOR OFFICIAL USE ONLY) | Inmate name: Justice L. Hinton | |
|---|---|---|
| | Inmate number: # 408238 | Housing: B2-49 |

**SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION**

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

After the beatdown I suffered on 6/30/2020 while in RHU pending transfer I wrote to Unit Manager Ocasio in an attempt to get the situation rectified on a ground level. I was ticket free for nearly 2 years since I started my sentence so therefore somebody should've been able to detect that something was odd. I felt like decisions made were biased and I didn't have a fair trial. Ocasio failed to reply back but I purposely made copies of the request for that exact reason. Premonition that the Admin. would try to sweep this matter under the rug because it was racially fueled in a day and age where that's unacceptable. "BLM" is a movement and I'm a young black man that was targeted. To resolve this matter all I ask is that you simply drop these insubstantial charges of assault on me.

Inmate signature: [signature] Date: 11/15/2020

- **For all remedies except health services, deposit this form in the Administrative Remedies box.**
- **For a health services issue, deposit this form in the Health Services box.**

**SECTION 5: DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW**

| Date Received: 11/25/2020 | IGP #: 137-21-105 | T#: ——— |
|---|---|---|

| Disposition: Rejected | Date of Disposition: Dec. 14, 2020 |
|---|---|

Reason: Per Administrative Directive 9.6 Inmate Administrative Remedies, Section 6 (C) Filing a Grievance; the grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. Therefore, your grievance is rejected.

| ☐ You have exhausted DOC's Administrative Remedies. | ☒ This matter may be appealed to: [illegible] |
|---|---|

| Signature: [signature] | Date: 12/14/2020 |
|---|---|

# Inmate Administrative Remedy Form

## Connecticut Department of Correction

CN 9602
REV 9/29/17

| | |
|---|---|
| Facility/Unit: MacDougal-WALKER C.I | Date: 11/15/2020 |
| Inmate name: Justice L. Hinton | Inmate number: #408238 |

**SECTION 1: SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.**

Follow the instructions and Refer to Section 2 below

*(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A. ☑ I am filing a Grievance:**

- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response OR state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

**B. ☐ I am requesting a Health Services Review:**

| | | |
|---|---|---|
| ☐ All Other Health Care Issues | ☐ Diagnosis/Treatment | **Complete Section 4** |

**C. ☐ I am filing an Appeal of a (select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

| | | | |
|---|---|---|---|
| ☐ Disciplinary Action | | > | **Complete Section 3 below** |
| ☐ Special Management Decision | ☐ Classification Decision | > | **Complete Section 4** |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | > | |
| ☐ Security Risk Group Designation | ☐ ADA Decision | > | |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > | |
| | ☐ Rejection of Correspondence | > | |

**SECTION 2: OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE.**

- Read and comply with the instructions below; then complete Section 4 (State the Problem) on the reverse side.

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

**SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY.**

- You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| | | | |
|---|---|---|---|
| Offense: | | Report date: | |
| Facility where hearing was conducted: | | Date of hearing: | |
| Did you have an advisor? | ☐ yes ☐ no | If yes, name of advisor: | |
| Did you identify witness (es) to the investigator? | ☐ yes ☐ no | Did your witness (es) testify? | ☐ yes ☐ no |

Name(s) of any witness(es):

# Inmate Grievance Appeal Form - Levels 2/3

**Connecticut Department of Correction**

CN 9604
REV 1/31/09

| | | |
|---|---|---|
| Inmate name: Justice L. Hinton | | Inmate number: #408238 |
| Facility/Unit: MWCI | Housing unit: B2-49 | Date: 12/15/2020 |
| IGP number: 137-21-106 | T number: | |

Use this form to appeal a Level 1 decision. CN 9602, Inmate Administrative Remedy Form and any attachments must accompany this form; no review will be undertaken if they do not accompany this form. Your appeal must be filed within 5 days of the Level 1 response; deposit it in the "Administrative Remedies" box.

**Appeal of Level 1 Decision to Level 2**

I am appealing the Level 1 decision because: I was segregated from 6/30/2020 until late July which in essence was why I couldn't file my grievance before the deadline. My efforts shouldn't go unnoticed. I was very persistent and patient throughout this process only to be stymied by the Admin. of CRCC when I verbally asked for a CN9602. There's something extremely wrong when this procedure was put in place to help me as an inmate yet I still feel significantly helpless.

Inmate signature: [signature] Date: 12/15/2020

**FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW**

| Date received: 12/28/20 | Disposition: *Rejected* | Date of disposition: 1/15/21 |
|---|---|---|

Reasons: *You are appealing a level one grievance regarding staff conduct at M.W.C.I. The response given by Warden Barone was appropriate. Your grievance was submitted far beyond the allotted timeframe (30 calendar days of the occurrence or discovery of the cause of the grievance) from the incident you claim occurred at C.R.C.C. This grievance was filed improperly and therefore rejected, it does not meet the criteria for a level 3 review.*

Level 2 reviewer: [signature]

☐ This grievance may be appealed within 5 days to Level 3.

☒ ~~You have exhausted the Department's Administrative Remedies.~~ Appeal to Level 3 will not be answered.

**Appeal of Level 2 Decision to Level 3**

I am appealing the Level 2 decision because:

Inmate signature: Date:

**Deposit your appeal in the "Administrative Remedies" box.**

**FOR OFFICIAL USE ONLY - LEVEL 3 REVIEW**

| Date received: | Disposition: | Date of disposition: |
|---|---|---|

Reasons:

Level 3 reviewer:

**CONFIDENTIAL**
(FOR OFFICIAL USE ONLY)

Inmate name: Justice Lamar Hinton
Inmate number: #408238
Housing: B2-49 cell

**SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION**

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I'm writing in regards to the matter that took place on 6/30/2020 i'm quite sure you're already familiar w/ the incident seeing as though i've written numerous grievances only to be denied exhaustion of my remedies.

I was viciously beaten on 6/30/2020 and after I recieved the guilty verdict (unjust) I wrote a request to the Warden and he never even acknowledged it. Luckily, I made a copy (see attached CN9601 form). All I was asking as a resolution is that he do his due diligence and correct his staff's wrongdoing so that i'd be back in position to finish the SRG program some time in January. And that's what i'm requesting now that you overturn the guilty verdict and give me justice.

Inmate signature: [signature]
Date: 11/15/2020

- For all remedies except health services, deposit this form in the Administrative Remedies box.
- For a health services issue, deposit this form in the Health Services box.

**SECTION 5: DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW**

Date Received: 11/25/2020
IGP #: 137-21-106
T#:

Disposition: Rejected
Date of Disposition: Dec 14, 2020

Reason: Per Administrative Directive 9.6 Inmate Administrative Remedies, Section 6 (C) Filing a Grievance; the grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. Therefore, your grievance is rejected.

☐ You have exhausted DOC's Administrative Remedies.
☒ This matter may be appealed to: LT

Signature: [signature]
Date: 12/14/2020

# Inmate Administrative Remedy Form

Connecticut Department of Correction

CN 9602
REV 9/20/17

| | |
|---|---|
| Facility/Unit: MacDougal-Walker C.I | Date: 11/15/2020 |
| Inmate name: Justice Hinton | Inmate number: # 408238 |

**SECTION 1: SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.**

Follow the instructions and Refer to Section 2 below

*(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A. ☑ I am filing a Grievance:**

- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response OR state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

**B. ☐ I am requesting a Health Services Review:**

| | | |
|---|---|---|
| ☐ All Other Health Care Issues | ☐ Diagnosis/Treatment | **Complete Section 4** |

**C. ☐ I am filing an Appeal of a (select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

| | | | |
|---|---|---|---|
| ☐ Disciplinary Action | | > | **Complete Section 3 below** |
| ☐ Special Management Decision | ☐ Classification Decision | > | **Complete Section 4** |
| ☐ Media Review Committee Decision | ☐ Furlough Decision | > | |
| ☐ Security Risk Group Designation | ☐ ADA Decision | > | |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs | > | |
| | ☐ Rejection of Correspondence | > | |

**SECTION 2: OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE**

- Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side.

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

**SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY**

- You may file a Disciplinary Appeal ONLY if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| | | | |
|---|---|---|---|
| Offense: | | | Report date: |
| Facility where hearing was conducted: | | | Date of hearing: |
| Did you have an advisor? | ☐ yes ☐ no | If yes, name of advisor: | |
| Did you identify witness (es) to the investigator? | ☐ yes ☐ no | Did your witness (es) testify? | ☐ yes ☐ no |

Name(s) of any witness(es):

Copy Made 10/1/2020

# Inmate Administrative Remedy Form

## Connecticut Department of Correction

CN 9602
REV 9/20/17

| | |
|---|---|
| Facility/Unit: MacDougal-Walker Correctional Institution | Date: 9/30/2020 |
| Inmate name: Justice L. Hinton | Inmate number: # 408238 |

**SECTION 1: SELECT ADMINISTRATIVE REMEDY A, B or C BELOW.**

Follow the instructions and Refer to Section 2 below

*(for property claims, complete form CN 9609, Lost/Damaged Property Investigation Form and deposit in the 'Administrative Remedies' box).*

**A.** ☑ **I am filing a Grievance.**

- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response **OR** state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

**B.** ☐ **I am requesting a Health Services Review:**

| | | |
|---|---|---|
| ☐ All Other Health Care Issues | ☐ Diagnosis/Treatment | **Complete Section 4** |

**C.** ☐ **I am filing an Appeal of a (select one below):** *(Appeals must be filed within 15 days of notification of a decision.)*

| | | |
|---|---|---|
| ☐ Disciplinary Action | > | **Complete Section 3 below** |
| ☐ Special Management Decision | ☐ Classification Decision > | **Complete Section 4** |
| ☐ Media Review Committee Decision | ☐ Furlough Decision > | |
| ☐ Security Risk Group Designation | ☐ ADA Decision > | |
| ☐ Determination of Grievance Process Abuse | ☐ Rejection of Outside Tapes/CDs > | |
| | ☐ Rejection of Correspondence > | |

**SECTION 2: OTHER REQUIREMENTS FOR USING THE INMATE ADMINISTRATIVE REMEDY PROCEDURE**

- Read and comply with the instructions below, then complete Section 4 (State the Problem) on the reverse side.

- Only one request for an administrative remedy must be submitted on this form.
- The request for an administrative remedy and the action sought should be stated simply and coherently.
- The length of this request for an administrative remedy shall be restricted to the space available in Section 4 and one (1) additional 8 1/2 x 11 inch page.
- This request for an administrative remedy must be free of obscene or vulgar language or content.
- This request for an administrative remedy must be filed by the inmate who is personally affected by the subject of the request and shall not be filed by an inmate on behalf of another.
- A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process.

**SECTION 3: DISCIPLINARY SECTION – Complete this Section for a Disciplinary Appeal ONLY**

- You may file a Disciplinary Appeal **ONLY** if you have pleaded not guilty and have been found guilty at a disciplinary hearing.
- If so, complete this section; then complete Section 4 (State the Problem) on the reverse side. >>>

| | |
|---|---|
| Offense: | Report date: |
| Facility where hearing was conducted: | Date of hearing: |
| Did you have an advisor? ☐ yes ☐ no | If yes, name of advisor: |
| Did you identify witness (es) to the investigator? ☐ yes ☐ no | Did your witness (es) testify? ☐ yes ☐ no |

Name(s) of any witness(es):

| **CONFIDENTIAL** (FOR OFFICIAL USE ONLY) | Inmate name: Justice L. Hinton | |
|---|---|---|
| | Inmate number: #408238 | Housing: B2-80 cell |

**SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION**

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

On the date of 6/30/2020 an incident occurred where I was
struck repeatedly w/ closed fist strikes by multiple Correctional
officers. I did my due-diligence and followed the procedure of
Remedy Exhaustion only to be stifled because of Admin's failure
to comply. My submitted request forms were never acknowledged
and returned to me. Luckily, I made copies of each one to
Medical- for failing to record or tend to my injuries, Unit Manager
Ocasio- for the way that the situation was mishandled, Dumas (who's
rank i'm unsure of)- to rectify the situation at hand with reason and
make an unbiased decision, another to Medical- for another
attempt at informing them that they neglected to document
my injuries, and Warden Martin- so that he could intervene
and make a righteous decision that those prior were incapable
of doing. To resolve this dilemma is rather simple exhaust
my remedies so that I can move along w/ the legal proceedings.
Please and thank you. The said incident took place in
Corrigan Radgowski C.I

| Inmate signature: [signature] | Date: 9/30/2020 |
|---|---|

- **For all remedies except health services, deposit this form in the Administrative Remedies box.**
- **For a health services issue, deposit this form in the Health Services box.**

**SECTION 5: DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW**

| Date Received: | IGP #: | T#: |
|---|---|---|
| Disposition: | Date of Disposition: | |
| Reason: | | |
| ☐ You have exhausted DOC's Administrative Remedies. | ☐ This matter may be appealed to: | |
| Signature: | Date: | |

# Inmate Request Form

## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: # 408238

Facility/Unit: CRCC | Housing unit: RHU-101 | Date: 7.9.20

Submitted to: Dumas

Request: I was assaulted by staff (Known & unknown) on the date of 6.30.20 at the time of 10:00 - 11:00 p.m. I am requesting that the frivolous accusations that I was the one who caused harm dismissed. I wasn't aware that it could be thrown out on a ground level but being that it can why go through the hassle of putting me through a hearing? I was there so I know what happened and cameras DO Not lie. It's obvious that I resisted movement but I didn't attack anyone and that footage can atest to that and if you seen it don't turn a blind eye on my innocence because it would make it difficult to look your peers →

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name): | Title:

Action taken and/or response:

continue on back if necessary

Staff signature: | Date:

In the eye. You being in a
position of power should inter-
vene and make a correction
where there's error, for the
sake of doing the right thing
like I'm baffled you guys are
just sitting around ~~to~~ watch
this thing play out. My life
isn't a game like this shit
is foul.

# Inmate Request Form

## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton

Inmate number: #408238

Facility/Unit: CRCC

Housing unit: RHU-101

Date: 7/9/20

Submitted to: Warden Martin

Request: There was an incident that occurred on the night of 6/30/20 where a vengeful shakedown of my cell was conducted and this ultimately turned into me being beaten by YOUR staff sir. I was hit with a barrage of body parts in the head and face area, that's not the kind of use of force thats deemed appropriate. I'm requesting that you review the footage and see with your own eyes I wasn't the aggressor so you can step in and free me of being penalized in a hearing that I shouldn't have to attend. This could've been dismissed at a ground level but I don't know, it's too much to express.

continue on back if necessary

Previous action taken: I wrote to Dumas and tried to have him resolve this matter. Regardless of anything I have to follow the process of the chain of command so that's what i'm doing

continue on back if necessary

Acted on by (print name):

Title:

Action taken and/or response:

continue on back if necessary

Staff signature:

Date:

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: # 408238

Facility/Unit: CRCC | Housing unit: RHU - 101 | Date: 7.2.20

Submitted to: Medical

Request: Two things real quick:

1) I've been complaining about my head injury since the night of the incident but I haven't received adequate medical attention yet. I took numerous blows to the head and it's been killing me since. Whomever the on duty nurse was on 6.30.20 between 10:00 and 11:00 pm didn't properly examine my injuries. I need all of this to be documented. I need to be seen by the Doctor.

2) I've been requesting that photos be taken of my injuries but to no avail. It's protocol in these situations but it's almost as if they're

continue on back if necessary

Previous action taken: I requested C.O Bessette call medical the night of the incident, and on 7.1.20 I called for an Officer to get the Lieutenant, then earlier today I told a nurse about my issue and she said i'd have to write a request so, here I am.

continue on back if necessary

Acted on by (print name): Nurse Kayla | Title: RN

Action taken and/or response:

You have been added to the Nurse Sick call list to review your concerns.

continue on back if necessary

Staff signature: Kayla RN | Date: 7/8/20

waiting for me to fully recover
from whatever visible damage
I have on my face and head.

* Copy Made

# Inmate Request Form
**Connecticut Department of Correction**

CN 9601
REV 1/31/09

| | | | |
|---|---|---|---|
| Inmate name: Justice Hinton | | Inmate number: # 408238 | |
| Facility/Unit: CRCC | Housing unit: RHU-101 | | Date: 7.11.20 |

Submitted to: Ocasio/Unit Manager

Request: I'd like to talk to you sir, about this whole outcome because as you know I was found guilty during my hearing Friday - I pleaded NOT guilty obviously - but i'm confused by this whole process and verdict with the lack of evidence. That camera footage is substantial especially for me, it was vital in my defense But as you've seen there's a pillar in the way and you can't see what happens for a good amount of time. Either way I can take a polygraph or anything to prove that I in fact never swung on any of the officers. My word is all I have and contrary to their reports I was the one beaten cas. And you said it yourself you seen my injuries, →

continue on back if necessary

Previous action taken: I wrote Dumas & Warden Martin so they can intervene and dismiss this at a ground level but they had something else in mind. Let Justice Hinton suffer the injustice of this Admin. They are trying to put me through the wringer. I've never gotten a DR since I started this bid 18 months ago now I'M assaulting C.O's?

continue on back if necessary

| | |
|---|---|
| Acted on by (print name): | Title: |

Action taken and/or response:

continue on back if necessary

| | |
|---|---|
| Staff signature: | Date: |

that medical neglected to document, can I get a written statement confirming that you indeed seen the aftermath of the incident? So, it doesn't look like i'm crying wolf here! I have no reason to fabricate any of the events that took place on 6/30/20. Officer St Jean even wrote in a statement he struck me repeatedly Meanwhile whomever else put hands on me that night never accounted for their actions so where does that leave me? St. Jean is saying he struck me in the back of the head a few times but somehow I appear with a knot overlapping my left eye, a black left eyelid, a knot on the right side of my forehead, knots scattered atop my head, soreness to my temple, and a minor laceration under my left eye (that's going to leave a blemish if not a scar)? 2+2=4 nobody's looking at the facts or lack of for that matter. It's easy for a state employee to create a false narrative and have it deemed the truth by his peers and thats exactly what's going on here. I don't know how McGregor got that "contusion" on his cheek but it could've easily been a strike intended for me by one of his coworkers that failed to hit it's mark but i'm the scapegoat. Why? Because I put them through "extra work", I resisted movement and the higher ups go along with it because "McGregor" is one of ours, he's a comrade right? And it troubles me that all my evidence was cast aside and disregarded. I have plenty more to say but I don't want to overwhelm you so i'll end by saying this: I have 3 statements from 3 inmates who's cells were positioned perfectly to witness what transpired that night. Everything they wrote matches and aligns with what i'm saying (I just have more details because I was a victim) when in fact we had NO way to organize a rehearsed play out of the events. I'm in Seg, Vanterpool's in another pod, Bailey and Bryant are still in B pod - scattered all over - that's no coincidence that we all have a similar narrative. The truth is the truth and your staff are dishonest. period!

Unit Manager Ocasio

*Copy Made

# Inmate Request Form

## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Justice Hinton | Inmate number: #408238

Facility/Unit: CRCC | Housing unit: RHU-101 | Date: 7.12.20

Submitted to: Medical

Request: I had quite the scare today. So, i'm laying down reading a book and I get the urge to relieve myself so I get up but i'm stopped in my tracks by a sudden headrush. I proceed to step forward so I can reach the wall for support but my legs turned to noodles I pinballed a couple objects on my wall down and I way my head too. As i'm on my back it dawned on me that i'd just fainted so I crawled a short distance and pressed the emergency button, to no avail. Luckily no injuries were sustained when I collapsed other than a knot on the right side of my forehead, on my hairline. I need to be evaluated seen the incident on →

continue on back if necessary

Previous action taken: I wrote several requests prior to this and I understand the sick-call process is INDEED a process but I feel like my health and wellness are being diminished because my appt. to be seen is delayed when in fact I should have been examined immediately.

continue on back if necessary

Acted on by (print name): | Title:

Action taken and/or response:

continue on back if necessary

Staff signature: | Date:

6/30/20 strange things have been happening to me. By the first this is the way I passed out.

# Inmate Request Form

**Connecticut Department of Correction**

CN 9601
REV 1/31/09

Inmate name: Justice Hinton

Inmate number: # 408238

Facility/Unit: CRCC

Housing unit: RHU-101

Date: 7/9/20

Submitted to: Warden Martin

Request: There was an incident that occurred on the night of 6/30/20 where a vengeful shake down of my cell was conducted and this ultimately turned into me being beaten by YOUR staff sir. I was hit with a barrage of body parts in the head and face area, that's not the kind of use of force thats deemed appropriate. I'm requesting that you review the footage and see with your own eyes I wasn't the aggressor so you can step in and free me of being penalized in a hearing that I shouldn't have to attend. This could've been dismissed at a ground level but I don't know, it's too much to express.

continue on back if necessary

Previous action taken: I wrote to Dumas and tried to have him resolve this matter. Regardless of anything I have to follow the process of the chain of command so that's what i'm doing

continue on back if necessary

Acted on by (print name):

Title:

Action taken and/or response:

continue on back if necessary

Staff signature:

Date:

# Disciplinary Report

**Connecticut Department of Correction**

CN 9503/1
REV 10/01/19

| | |
|---|---|
| Facility/Unit: CRCC | Report date: 6/30/2020 |
| Inmate name: Hinton, Justice | Inmate number: 408238 |
| Housing unit: Bravo | Location of incident: Bravo Cell #209 |
| Report number: | Incident date: 6/30/20 — Incident time: 10:45 ☐ am ☒ pm |
| Offense: Assault on DOC Employee | Offense class: ☒ A ☐ B ☐ C |

Description of violation:

On 6/30/20 Inmate Hinton, Justice #408238 failed to comply with staff's verbal direction to face the wall and place his hands behind his back. Inmate Hinton turned and confronted Officer St Jean in an aggressive stance. Staff attempted to guide him to the wall, he pulled away and continued to be combative while striking Officers in the facial and mid-body area.

Witness(es):

Physical evidence:

| | |
|---|---|
| Reporting employee (print): Flores | Title: Correction Officer |
| Reporting employee (signature): MFlores | |
| Date: 6/30/20 — Time: 11:00 ☐ am ☒ pm | Employee requests copy: ☒ yes ☐ no |

**CUSTODY SUPERVISOR / UNIT MANAGER REVIEW**

| | |
|---|---|
| ☒ Administrative Detention | Date: 6/30/2020 — Time: 11:45 ☐ am ☒ pm |
| ☐ Accused inmate interviewed | ☐ Informal disposition |
| Custody Supervisor / Unit Manager name (print): Pearson | |
| Custody Supervisor / Unit Manager signature: [signature] | |
| Title: LT. | Date: 6-30-2020 — Time: 11:55 ☐ am ☒ pm |

**INMATE NOTICE**

| | |
|---|---|
| Delivered by (print): Rivard | Delivered by (signature): [signature] |
| Title: C/O | Date: 7/1/20 — Time: 1230 ☒ am ☐ pm |

☐

- Check if inmate receiving disciplinary report is placed on a Behavioral or Mental Health Observation Status.
- If applicable, delivering officer must read the Disciplinary Report to the inmate and leave the copy at the Officers Station.
- Once a qualified mental health provider deems that the inmate can retain paper, the Disciplinary Report shall be issued to the inmate in accordance with this directive.
- Note: Timeframes associated with the disciplinary report process for inmates initially placed on Behavioral or Mental Health Status shall not be altered and will continue as outlined in this directive.

# Disciplinary Process Summary Report

**Connecticut Department of Correction**

CN 9504/1
Rev 10/01/19

| | |
|---|---|
| Facility/Unit: CRCC | Housing unit: RHU 101 |
| Report date: 6/30/2020 — Report number: CRCC2007006 | Hearing date: 7/10/2020 |
| Inmate name: HINTON, JUSTICE | Inmate number: 408238 |
| Reporting employee: OFFICER FLORES | DHO: Lt McNeil |
| Investigator: OFFICER NEMETH | Advisor: **DECLINED** |
| Inmate appearance: ☒ yes ☐ no | Reason: |
| ☐ Suspended sentence | |
| ☐ Deferred prosecution — Number of days | Through: |
| ☐ Charge dismissed — By: | Reason: |
| Continuances (dates and reasons): | **SANCTIONS:** 25 P/S - 6-30 → 7-24-2020<br>60 LOC - 7-25 → 9-22-2020<br>60 LOV - 7-25 → 9-22-2020 |

**SUMMARY**

| | Charge/class | Plea | Finding |
|---|---|---|---|
| Original | **ASSAULT ON A DOC EMPLOYEE / A** | Not Guilty | Guilty |
| Substitute | | | |

Forfeiture of Risk Reduction Earned Credits: ☐ -10 ☐ -15 ☐ - 25 ☒ - 60 ☐ - ______

☐ Confidential information — Reliability:

Documentation submitted: ☐ Incident report ☐ Medical incident report ☐ Use of force report ☐ Other (specify)

Witness name: — appearance ☐ yes ☐ no
Testimony:

Witness name: — appearance ☐ yes ☐ no
Testimony:

Witness name: — appearance ☐ yes ☐ no
Testimony:

☐ Witness exclusion — Name: — Reason:

Physical evidence, written testimony:

# Disciplinary Process Summary Report

**Connecticut Department of Correction**

CN 9504/2
Rev 10/01/19

Basis for finding:

Inmate Hinton, Justice #408238 received a Class A DR for Assault on a DOC Employee. Inmate Hinton was advised of the hearing process. Inmate Hinton had three inmate witnesses. All three inmate witnesses statement were read at the hearing. Inmate Hinton declined to utilize an advisor. Inmate Hinton plead not guilty at the hearing. All evidence was reviewed with inmate Hinton at the hearing. This DHO reviewed the video and you see the Officers attempt to secure inmate Hinton and he pulls away from the Officer. I can't see anything right after inmate pulled away due to obstruction of a pole in the middle of the Unit. You then see Inmate Hinton on his feet with the Officer actively resisting staff as they were trying to secure him.

Inmate Hinton said that he never struck an Officer during the incident at the hearing. Inmate Hinton said that he blacked out during the incident. Officer McGregor wrote that he was struck in the left side of this face by the inmate. Medical incident Report describe injuries to Officer McGregor. There is a picture of Officer McGregor left side of his face for evidence and was shown to the inmate. Lieutenant Rangel wrote that inmate Hinton was actively engaged in a combative state (kicking) against the contact Officers while refusing to give up his hands to be handcuffed. The DHO found the inmate guilty at the hearing based video, documentation and evidence submitted. Inmate Hinton was advised he has 15 days to appeal the DHO sanctions.

Basis for sanctions:

**DETER FROM FUTURE MISCONDUCT.**

**DISPOSING OFFICER**

| | |
|---|---|
| Hearing officer signature: Lt. McNeil [signature] | Date: 7/10/2020 |
| Disciplinary coordinator signature: | Date: |
| Investigator signature: | Date: |

**INMATE NOTICE**

You may appeal a finding of guilty by a hearing officer within 15 days.

| | |
|---|---|
| Delivering officer signature: [signature] | Date: 7-10-2020 |

Copies (5): investigator, reporting employee, inmate, disciplinary file and inmate master file

| State of Connecticut Department of Correction ADMINISTRATIVE DIRECTIVE | Directive Number 2.17 | Effective Date 09/26/14 | Page 1 of 7 |
|---|---|---|---|
| | Supersedes Employee Conduct dated 6/3/2013 | | |
| Approved By [signature] Interim Commissioner Scott Semple | Title Employee Conduct | | |

1. Policy. Each employee of the Department of Correction shall engage in appropriate and ethical conduct while carrying out official duties and while engaged in off duty activities which directly reflect on the Department.

2. Authority and Reference.

A. Public law 108-79. Prison Rape Elimination Act of 2003.
B. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
C. United States Code, 5 USC 1501 through 1508 (Hatch Act).
D. Connecticut General Statutes, Sections 1-79 through 1-80, 1-81 through 1-86, 1-86e through 1-89, 5-266a through 5-268, 18-81,21a-267(d) 53a-65, 53a-71, 53a-73a, 53a-174 and 53a-174b.
E. Public Act 11-71, An Act Concerning the Penalty for Certain Non-Violent Drug Offenses.
F. Administrative Directives 1.10, Investigations; 1.12, Employee Legal Counsel/Representation; 1.13, Code of Ethics; 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment; 2.6, Employee Discipline; 2.11, Employee Dependability; 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention; 9.6, Inmate Administrative Remedies; and 10.7, Inmate Communications.
G. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1A-29, 2-CO-1C-01, 2-CO-1C-04, 2-CO-1C-11 and 2-CO-1C-20.
H. American Correctional Association, Standards for Adult Correctional Institution, Fourth Edition, January 2003, Standards 4-4024, 4-4048, 4-4056, 4-4063 and 4-4069.
I. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-7E-21, 4-ALDF-7C-01 and 4-ALDF-7C-02.
J. American Correctional Association, Standards for Adult for Probation and Parole Field Services, Third Edition, August 1998, Standards 3-3032, 3-3047, 3-3053, 3-3060 and 3-3068.
K. American Correctional Association, Standards for Correctional Training Academies, First Edition, May 1993, Standards 1-CTA-1C-01, 1-CTA-1C-0[illegible], 1-CTA-1C-12 and 1-CTA-1C-14.

3. Definitions and Acronyms. For the purposes stated herein, the following definitions and acronyms apply:

A. CD. Compact Disc.
B. DOC. Department of Correction.
C. DVD. Digital Video Disc.
D. Electronic Devices. Any personal electronic wireless communication device to include but not limited to a cell phone, pager, blackberry, or personal digital assistant (PDA).
E. Immediate Family Member. A spouse, parent or step parent, child or stepchild, grandparent or step grandparent, sibling or stepsibling, grandchild or step grandchild, or cohabitant.
F. Inmate. An individual under the supervision of the Department of Correction, or having any continuing sentence under the Department's supervision including but not limited to parole or community supervision.

G. MP3. An audio format for consumer audio storage and playback of music on digital audio players.
H. PDA. Personal Digital Assistant.
I. PREA. Prison Rape Elimination Act.
J. Sexual Abuse. For the purposes of this directive, Sexual Abuse shall be defined in accordance with Section 3 of A.D. 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention.

4. Employee Responsibility. Each employee of the Department shall act in a professional, ethical and responsible manner. Each employee shall become familiar with the tables of organization depicting the Department and Unit chains of command. Each employee shall show respect to any ranking member of the Department and shall obey any lawful order of a supervisor. An employee given an instruction or order which conflicts with a previous instruction or order shall inform the present supervisor of the conflict and follow the order as directed. Questions regarding any of the provisions contained in this Directive shall be directed to the employee's Unit Administrator or designee.

5. Standards of Conduct.

A. Each employee shall:

1. Maintain compliance with all PREA Standards.
2. Comply with all federal and state statutes and regulations, administrative and unit directives, department and unit policies and procedures, post orders and lawful orders/instructions.
3. Enforce all rules, regulations and policies of the Department as appropriate.
4. Ensure that a safe, secure and sanitary work environment is maintained.
5. Remain alert, aware of, and responsive to the surroundings at all times.
6. Remain on assigned post until properly relieved and/or remain at worksite as required. No employee shall be authorized to leave facility grounds without authorization from a supervisor.
7. Comply with official notices and roll call and other instructions.
8. Meet all employee responsibilities for dependability.
9. Report any arrest or receipt of any criminal summons, any charge of infraction of C.G.S. 21a-267(d) (Prohibited Acts re: Drug Paraphernalia) and/or any protective or restraining order received from a law enforcement agency or court, to an appropriate supervisor prior to returning to work or within 48 hours (whichever occurs first). Such violations are subject to investigation in accordance with A.D. 1.10. This requirement shall not apply to summons received for minor traffic violations. An employee shall submit supporting documentation of arrest, or receipt of summons. Employees who have been arrested must inform their supervisor of the disposition of their charges within 48 hours of a disposition being reached (to include, but not limited to, convictions, dismissal of charges, nolles, accelerated rehabilitation, probation, suspended sentences, continued without finding, payment of fines, and special terms and conditions of the court). The employee must also submit supporting documentation of the disposition within 48 hours after disposition. Any employee on extended leave shall report any arrest or receipt of summons,

and subsequent disposition, to the Unit Administrator within 48 hours.

10. Report the receipt of any civil summons that impacts employment (e.g., named as a defendant in an employee or inmate lawsuit, restraining order, capias, contempt of court, etc.) associated with the employee's duties to an appropriate supervisor on or by the next scheduled work day, but no later than 48 hours after receipt of the summons.
11. Provide the Office of the Attorney General with relevant documents, subpoenas or other materials related to legal action with which they are involved in accordance with Administrative Directive 1.12, Employee Legal Counsel/Representation. Staff shall cooperate in all inquiries, depositions, interrogatories, or other legal processes that will assist the Legal Affairs Office and/or the Office of the Attorney General.
12. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.
13. Report to an appropriate supervisor any condition or use of medication the employee is taking, that may affect job performance or judgment.
14. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.
15. Act in a professional manner showing respect to other employees and the public.
16. Respect and protect the rights of inmates.
17. Maintain good stewardship of all state property and equipment.
18. Maintain appropriate demeanor at all times.
19. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.
20. Report, in writing, to a supervisor when a friend or relative is or becomes incarcerated in any Connecticut DOC facility within 48 hours of discovery.
21. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and/or any law enforcement, regulatory or state agency.
22. Appropriately file information as required by the State Ethics Commission in accordance with Administrative Directive 1.13, Code of Ethics.
23. Promptly report to a supervisor any threat, harassment, physical or verbal abuse, assault, or act of intimidation. Incidents of discrimination or sexual harassment shall be reported in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.
24. An employee must receive written authorization from his/her Unit Administrator and the Unit Administrator housing the incarcerated family member in order to visit, phone or correspond with such family member.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, employees or inmates.
2. Excessive or unnecessary use of force.
3. Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.
4. Conveyance or possession of unauthorized items within, into or out of a facility, or other correctional unit.
5. Neglect of duty or failure to supervise.

6. Sleeping or inattentiveness while on duty.
7. Possessing unauthorized items while on duty (e.g., reading materials, personal electronic devices, etc.).
8. Abuse of sick time, accrued leave or workers' compensation.
9. Reporting to work in an impaired condition as a result of the use of alcohol, an illegal drug, or any medication. Employees shall not consume alcohol while on duty or in uniform.
10. Entering a correctional unit when off duty unless previously authorized.
11. Engaging in abusive, obscene, threatening, intimidating language or behavior.
12. Engaging in unprofessional or illegal behavior, both on and off duty that could reflect negatively on the Department of Correction or conflict with the Department's mission, to include association or membership with security risk groups, criminal enterprises, hate groups, or groups of high interest to law enforcement. It shall be the employee's responsibility to seek written clarification from the Unit Administrator regarding such association or membership.
13. Engaging in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.
14. Engaging in bartering, gambling or games of chance with inmates.
15. Engaging in retaliation or reprisal (to include coercion or threatening behavior) against an inmate for participating in activities that are protected by law or directive. Such protected activities include, but are not limited to:

    a. filing an appeal, grievance or property claim in accordance with Administrative Directive 9.6, Inmate Administrative Remedies;
    b. accessing courts; and,
    c. engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communications.

16. Engaging in undue familiarity with inmates which includes, but shall not be limited to, the following:

    a. any sexual contact between an employee and an inmate and/or person under the Department's supervision, or continuing sentence under the Department's supervision including but not limited to parole or community supervision;
    b. sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;
    c. personal involvement in an inmate's private or family matters outside assigned professional duties;
    d. performing personal favors for inmates outside assigned professional duties;
    e. discussing with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);
    f. discussing with an inmate personal and/or business matters of employees;
    g. discussing security operations of a facility with an inmate;

h. inconsistently enforcing facility rules to favor an inmate or group of inmates over other inmates or groups of inmates;
i. having personal work done by an inmate;
j. visiting, corresponding with or accepting telephone calls, personal notes or letters from an inmate who is under the custody of the Department (except for an immediate family member AND only when authorized in writing by the employee's Unit Administrator and the Unit Administrator of the facility where the immediate family member is incarcerated);
k. housing an inmate who is under the custody of the Department (to include an inmate on community supervision), at the employee's home (except for an immediate family member AND when authorized in writing by the employee's Unit Administrator and the Director of Parole and Community Services);
l. entering into a personal or business agreement with an inmate, including, but not limited, to acting as a bail bondsman for an inmate or providing the resources for the inmate to bond out without prior notification to the Unit Administrator; and,
m. Transporting an inmate to an unauthorized location.

17. Engaging in behavior which is sexually, emotionally, or physically abusive or harassing toward the public, employees or inmates.
18. Unauthorized appropriation or use of any property belonging to the public, state or an inmate for personal, political or union purposes (i.e., computers, electronic mail, Department letterhead, etc.).
19. Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.
20. Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.
21. Use of official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.
22. Engaging in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.
23. Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan, political contribution, reward or promise of future employment as outlined in Administrative Directive 1.13, Code of Ethics.
24. Engage in any political activities that conflict with state and federal laws to include the Hatch Act.
25. Failure to follow a lawful order.
26. Engaging in insubordination.
27. Failure to cooperate with a Department investigation.
28. Lying or giving false testimony during the course of a Department investigation.
29. Intentionally withholding information necessary for the completion of an investigation.
30. Failure to properly conduct tours and/or inmate counts.
31. Engaging in behavior to include lying or spreading false rumors that purposely defame the character of an employee, the public or the Department.

32. Engaging in any behavior or activity prohibited by Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.
33. Engaging in retaliation, coercion, intimidation, harassment, threats or discrimination against any employee.
34. Conveying or possessing the following in a correctional facility unless authorized in writing by the Unit Administrator or higher authority:

    a. any personal electronic wireless communication device (to include, but not limited to, a cellphone, pager, blackberry device, personal digital assistant (PDA));
    b. any audio recording or playback device (to include, but not limited to, a radio, tape/CD player, ipod or MP3 player); or,
    c. any photographic/video recording or playback device (to include, but not limited to, a television, DVD player, ipod, MP3 player, or electronic/video game).

6. Staff Discipline In accordance with Administrative Directive 2.6 staff shall be subject to disciplinary sanctions up to and including termination for violating agency inmate sexual abuse or harassment policies. Termination is the presumptive disciplinary sanction for staff that have been found to have engaged in sexual abuse. All terminations for violations of agency inmate sexual abuse or harassment policies or resignations by staff who would have been terminated but for their resignation shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

7. Supervision of Family Members. An employee shall not be employed in any position that places the employee above or under the chain of command or possible supervision of any immediate family member as defined in Section 3(A), nor shall the employee be placed above or under the chain of command or possible supervision of any immediate family member of the employee's spouse or cohabitant. Such relationships must be reported by the family member of higher rank, in writing, to the Unit Administrator.

   A relationship between family members who are not immediate family as defined in Section 3(A) of this Directive may preclude placement of an employee in a chain of command. Such relationships shall be evaluated by the appropriate Division Head on a case by case basis.

8. Staff Relationships.

   A. Supervisor/Employee Relationships. Any supervisor or manager who becomes romantically or intimately involved with a Department employee in the chain of command must report such relationship so that the Department can take appropriate actions to ensure assignments do not result in a conflict of interest or possible supervision. The supervisor or manager involved in the relationship must report such relationship, in writing, to the Unit Administrator. Failure to do so shall result in discipline.
   B. Employee/Employee Relationships. Employees who become romantically or intimately involved with one another shall be required to maintain a professional demeanor while on duty or on state property. It shall be the employees' responsibility to ensure said relationship does not affect their ability to carry out the duties and responsibilities of their respective positions.
   C. Outside Business Relationships. An employee who owns or runs an outside business shall be prohibited from employing any supervisor or

subordinate in his/her chain-of-command. Conversely, an employee shall be prohibited from working for any supervisor or subordinate in his/her chain-of-command who owns or runs an outside business.

9. Reporting Policy and/or Conduct Violations. Each employee shall report to a supervisor or appropriate personnel any policy violation or breach of professional conduct involving the public, employees or inmates under the jurisdiction of the Department of Correction.

10. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

United States District Court
District of Conn

Justice Panton
Plaintiff

Case No:

v

St. Jean, Et Al
Defendants

Date

Proof of Service

Justice Panton declares under penalty of perjury pursuant to 28 U.S.C § 1746 that he mailed a copy of the enclosed Production of Documents to defendant's counsel ____________ Assistant Attorney General at 110 Sherman St Hartford Ct 06105 by placing them in an envelope and placing the envelope in the Mailbox at ____________ (facility name), ____________ (facility address) on ____________ (date)

[Name]
[Date]

United States District Court
District of Conn.

[illegible] Plaintiff

Case No:

v.

[illegible] Et Al
Defendants

Date.

Plaintiff's first request for production of documents

Pursuant to Rule 34, Fed. R. Civ. P., the plaintiff requests that the defendants produce the documents listed within 30 days, either by providing the plaintiff with copies or by making them available to the plaintiff for inspection and copying.

1. All incident reports and medical reports pertaining to the plaintiff's incident on

2. All use of force reports pertaining to the incident on

3. Plaintiff's full and complete medical record

4. Plaintiff's full and complete transit [illegible] history

5. Post orders at Corrigan Correctional Center inside & outside the [illegible] unit on the day of the incident on

6. Any and all policies, directives, or instructions to staff concerning the use of tear gas or other chemical agents by Corrigan Staff?

7. Any and all policies/directives or instruction to staff concerning the use of force by Corrigan staff.

[Name + Address]

# Disciplinary Report
## Connecticut Department of Correction

5/6/2018

CN 9503/1
REV 10/01/19

| | |
|---|---|
| Facility/Unit: CRCC | Report date: 6/30/2020 |
| Inmate name: Hinton, Justice | Inmate number: 408238 |
| Housing unit: Bravo | Location of incident: Bravo Cell #209 |
| Report number: CRCC2006006 | Incident date: 6/30/20 Incident time: 10:45 ☐ am ☒ pm |
| Offense: Assault on DOC Employee | Offense class: ☒ A ☐ B ☐ C |

Description of violation:

On 6/30/20 Inmate Hinton, Justice #408238 failed to comply with staff's verbal direction to face the wall and place his hands behind his back. Inmate Hinton turned and confronted Officer St Jean in an aggressive stance. Staff attempted to guide him to the wall, he pulled away and continued to be combative while striking Officers in the facial and mid-body area.

Witness(es):

Physical evidence:

| | |
|---|---|
| Reporting employee (print): Flores | Title: Correction Officer |
| Reporting employee (signature): M Flores | |
| Date: 6/30/20 Time: 11:00 ☐ am ☒ pm | Employee requests copy: ☒ yes ☐ no |

**CUSTODY SUPERVISOR / UNIT MANAGER REVIEW**

| | |
|---|---|
| ☒ Administrative Detention Date: 6/30/2020 | Time: 11:45 ☐ am ☒ pm |
| ☐ Accused inmate interviewed | ☐ Informal disposition |
| Custody Supervisor / Unit Manager name (print): Pearson | |
| Custody Supervisor / Unit Manager signature: [signature] | |
| Title: LT. Date: 6-30-2020 | Time: 11:55 ☐ am ☒ pm |

**INMATE NOTICE**

| | |
|---|---|
| Delivered by (print): Rinard | Delivered by (signature): [signature] |
| Title: C/O Date: 7/1/20 | Time: 1230 ☒ am ☐ pm |

☐
- Check if inmate receiving disciplinary report is placed on a Behavioral or Mental Health Observation Status.
- If applicable, delivering officer must read the Disciplinary Report to the inmate and leave the copy at the Officers Station.
- Once a qualified mental health provider deems that the inmate can retain paper, the Disciplinary Report shall be issued to the inmate in accordance with this directive.
- Note: Timeframes associated with the disciplinary report process for inmates initially placed on Behavioral or Mental Health Status shall not be altered and will continue as outlined in this directive.

# Disciplinary Report

## Connecticut Department of Correction

CN 9503/2
REV 10/01/19

| Investigator: [signature] | Receipt date: 7/1/2020 | Time: 908 ☒ am ☐ pm |
|---|---|---|

**Attempt, accessory and conspiracy: When supported by the evidence, the offenses of attempt, accessory and conspiracy shall be deemed to be included in the substantive offense without having to be separately charged. Attempt, accessory and conspiracy shall be punishable in the same degree as if the substantive offense were committed.**

## CLASS A OFFENSES

Alteration of a specimen
Arson
Assault
Assault on a DOC employee
Bribery
Contraband (dangerous instrument, escape item, unauthorized currency, drug and/or tobacco, drug and/or tobacco paraphernalia, intoxicating substance, tattoo equipment, wireless communication device or component)
Creating a disturbance
Destruction of property ($100 or more)

Escape
Escape from PCS Supervision
Falsely Reporting an Incident
Felonious misconduct
Fighting
Flagrant disobedience
Hostage holding
Hostage holding of a DOC employee
Impeding order
Interfering with safety or security
Intoxication
Possession of Sexually Explicit Materials

Public Indecency
Refusal or Removal Of an Institutional Program or Policy
Refusal to give a specimen
Refusing Housing
Riot (declaration by DOC Commissioner)
Secreting identity
Security Risk Group Affiliation
Security tampering
Self-mutilation
Sexual misconduct
Theft ($100 or more)
Threats
Violation of Program Provisions

## CLASS B OFFENSES

Bartering
Causing a disruption
Contraband (unauthorized items, items in excess of authorized amounts.

Destruction of property (under $100)
Disobeying a direct order
Gambling
Giving false information

Insulting language or behavior
Misdemeanant misconduct
Out of place
Theft (under $100)

## CLASS C OFFENSES

Disorderly conduct
Lingering
Sanitary/housing violation
Violation of unit rules

### Waiver of 24-hour Notice

I hereby waive my right to a 24-hour notice of hearing, and request that a hearing be held at the earliest convenience of the hearing officer.

| Inmate signature: | Date: |
|---|---|
| Witness signature: | Date: |

### Waiver of Appearance

I hereby waive my appearance at the disciplinary hearing. This does not constitute a guilty plea.

| Inmate signature: | Date: |
|---|---|
| Witness signature: | Date: |

### Guilty Plea

I hereby plead guilty to the charge contained in this disciplinary report. I voluntarily enter this plea and understand that my plea bars an appeal.

| Inmate signature: | Date: |
|---|---|
| Investigator/hearing officer signature: | Date: |

### Deferral of prosecution

| ☐ Prosecution deferred by Disciplinary Coordinator | Through date: |
|---|---|
| Disciplinary Coordinator signature: | Date: |
| Inmate signature: | Date: |